IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MICHAEL JOHN BRAY                                                          PLAINTIFF

v.                              Civil No. 6:23-cv-06066-S0H-CDC

NATHAN THOMAS DANIELS (Medical
Doctor, Ouachita River Correctional Facility)                        DEFENDANT

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

      This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendant's Motion for Summary Judgment. (ECF No. 38).

### I. BACKGROUND

      Plaintiff filed his Complaint in the Eastern District of Arkansas on May 22, 2023. (ECF No. 2). It was transferred to this District on June 5, 2023. (ECF No. 5). The Court entered an Order directing Plaintiff to submit an Amended Complaint to address deficiencies in Plaintiff's original Complaint on June 7, 2023. (ECF No. 8). Plaintiff submitted his Amended Complaint on June 16, 2023. (ECF No. 10). He submitted a Supplement to his Complaint on July 6, 2023. (ECF No. 12). The supplement was entitled "Brief in Support of Sect. 1983 Complaint." (*Id*. at 1).

      For his first claim, Plaintiff alleges that Defendant Dr. Daniels denied him medical care on approximately July 13th, 14th, and 20th of 2020. (ECF No. 10 at 4). Plaintiff alleges Defendant Daniels "turned a blind eye" to the seriousness of his right knee meniscus injury, refusing to treat

1

the injury, order an MRI, or seek an outside orthopedic consult. (*Id*.). Plaintiff alleges that his knee developed excess fluid build-up that "even a blind man could see." (*Id*.). Plaintiff alleges he received an MRI on November 2, 2020, and that result showed that he had been suffering - and continued to suffer – agonizing pain. (*Id*. at 5). Defendant Daniels then pulled the fluid from his knee the next day. (*Id*.). He alleges he did not receive a rollator for mobility until 5 months later. (*Id*.). Plaintiff alleges that it is now too late to repair the meniscus, and his knee is "permanently altered." (*Id*.). He alleges the knee continues to "pop and throb." (*Id*. at 4).

For his second claim, Plaintiff alleges that Defendant Daniels denied him medical care for his knee on July 20, 2020. (*Id*. at 6). Plaintiff provides additional detail from his first claim, alleging that he "blacked out" and fell on July 15, 2020. (*Id*.). He alleges he had a very large bruise, but Daniels just said "Hmm" and left for the break room, apparently deciding that his lunch was more important than treating Plaintiff's knee. (*Id*.). Plaintiff alleges he was only given 10 days of naproxen and analgesic balm; no x-ray was taken. (*Id*.).

For his third claim, Plaintiff alleges he did not have any type of "layin or med. script to keep from working." (*Id*. at 8). As a result, he was forced to feed the Echo-Foxtrot Barracks with "C.O. II" Morrison on July 20, 2020. (*Id*.). During that time, his knee made a loud noise, he fell to the ground and began screaming and crying. (*Id*.). The SNU Day Clinic Manager came and saw him and ordered a wheel chair brought to him and ordered an x-ray. The x-ray showed nothing broken, but "showed unremarkable 'meaning there was something wrong.'" (*Id*.). Defendant Daniels again turned a "blind eye." He was given no further evaluation, he was given nothing to immobilize the injury, and he was given no mobility device such as a wheel chair, crutches or rollator. (*Id*.). He alleges this was when he tore his right knee meniscus. (*Id*.).

Plaintiff proceeds against Defendant Daniels in his individual capacity. (*Id*. at 5, 7, 8). He seeks compensatory, punitive and other damages. (*Id*. at 9). He seeks $100,000 dollars each for both compensatory and punitive damages. (*Id*.). As his other damages, he asks that Defendant Daniels' license be revoked so that he can never practice medicine again. (*Id*.). He also seeks appointment of counsel, a jury trial, and that Defendant be made to pay all fees rendered upon Plaintiff. (*Id*.).

Defendant Daniels filed a Motion for Summary Judgment on the Merits on May 7, 2024. (ECF No. 38). Defendant argues that Plaintiff was appropriately assessed and treated by medical staff, including Defendant Daniels, for his torn right knee meniscus. (ECF No. 39 at 4). He further argues Defendant Daniels regularly assessed Plaintiff in relation to his knee as follows:

> He appropriately ordered tramadol, baclofen and naproxen for pain management, a neoprene sleeve and a rollator. *Id.* When Mr. Bray complained of increased pain, Dr. Daniel ordered a steroid injection. *Id.* These are appropriate treatments for a torn meniscus. *Id.* During the course of his treatment by Dr. Daniel, Mr. Bray's knee pain improved.

(*Id*.). Dr. Donna Shipley, Board Certified Family Practice physician, reviewed Plaintiff's medical care and treatment. (ECF No. 40-1). Dr. Shipley noted Plaintiff's mild left-hip degeneration and leg length discrepancy. She states the UAMS orthopedic surgeon did not recommend a hip replacement, and instead recommended pain management and lifestyle modifications, including diet and exercise. (*Id*.). She notes that Plaintiff injured his right knee on July 14th or 15th of 2020. She notes the x-ray revealed "no fracture, no joint effusion and unremarkable soft tissue." (*Id*. at 1). She states he was appropriately treated with an ACE bandage and naproxen for pain. (*Id*. at 1-2). When Plaintiff continued to complain of right knee pain, an MRI was ordered and indicated a small joint effusion, radial tear, and mild arthritis. (*Id*. at 2). Proper treatment was an ACE

bandage and pain medication. (*Id.*). She states "[o]bjectively and subjectively, Mr. Bray's knee pain improved until December 17, 2020." (*Id.*).

On December 17, 2020, Plaintiff presented with pain and edema in his right knee. (*Id.*). Steroids and an ACE bandage were ordered. (*Id.*). On January 4, 2021, Defendant Daniel continued the steroid prescription. (*Id.*). On January 25, 2021:

> Mr. Bray was able to ambulate with no abnormality and did not utilize any assistive device. Based on this clinical presentation, Dr. Daniel appropriately ordered tramadol, baclofen and naproxen for hip and knee pain management, a neoprene knee sleeve and an ACE bandage.

(*Id.*). Repeated examinations and treatment are detailed for 2021 and 2022. (*Id.*). Shipley notes that Plaintiff reported to medical providers that his knee pain was much improved in March 2022. (*Id.*). She further states that "appropriate treatment for a torn meniscus consists of rest, compression and pain management. (*Id.* at 3). Steroid injections are appropriate for continued pain. (*Id.*). She states that Plaintiff was non-compliant with the use of the ACE bandage and neoprene sleeve. (*Id.*). Finally, Shipley states she believes the medical care and treatment provided by Dr. Daniels was appropriate, adequate and timely. (*Id.*).

On May 8, 2024, the Court entered an Order directing Plaintiff to submit his Response to the Summary Judgment Motion. (ECF No. 41). The Order advised Plaintiff that he must file a Separate Statement of Facts in Dispute as part of his Response, and must provide record citation to any documents relied upon in his Response. (*Id.*). Plaintiff filed documents labelled as a Response and Memorandum Brief on May 31, 2024. (ECF Nos. 42, 43). He failed to file a Separate Statement of Facts as directed. Plaintiff also failed to cite to documents in the record in his Response or Brief.

In his Response, Plaintiff provides three numbered sections in five pages. He reiterates the allegation in his Complaint that Defendant Daniels "turned a blind eye" to his injury and clearly felt that his lunch was more important than Plaintiff's knee. (ECF No. 42 at 1-2). Plaintiff argues that Defendant Daniels lost his medical license once for his "unprofessional conduct and medical neglect," and since he got away with it once he is trying it again. (*Id*. at 2). Plaintiff further argues he has never seen or heard of Dr. Shipley in his 36 years of incarceration. (*Id*. at 3). He further argues she has never examined him. (*Id*.). He notes that Shipley failed to mention that Defendant Daniels did not get involved with Plaintiff's knee until after the MRI, at which point he gave him a steroid injection. (*Id*.). Plaintiff further states that Defendant Daniels never physically examined him until giving him the steroid injection. (*Id*.). Plaintiff notes Shipley also failed to mention that the MRI showed damage to his right femur due to the force of his fall. (*Id*.). Plaintiff's Response is signed under penalty of perjury. (*Id*. at 4). No exhibits are attached.

Plaintiff's Memorandum Brief is entitled "Brief in Support of 42 U.S.C. Sect. 1983 Complaint." (ECF No. 43). This document is signed and dated on May 24, 2024, and appears to be essentially identical[1] the document submitted as a Supplement to his Amended Complaint with the Court on July 6, 2024. (ECF No. 12). The Brief is provided under penalty of perjury. Attached to the Brief, Plaintiff provided copies of grievance documents. (ECF No. 43-1).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[1] A few handwritten changes, such as minor differences in dates are apparent. For example, page one, paragraph 2 of each document has two different dates. The first submission indicates he saw LPN Dunnegan on July 16, and the second document indicates he saw her on July 15. (ECF Nos. 12 at 1; 43 at 1). Review of his medical records indicates he saw LPN Jennings on July 15, 2020. (ECF No. 40-2 at 1).

*Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  ANALYSIS

#### A.  Plaintiff's Failure to Comply with Local Rules

Plaintiff failed to submit a separate Statement of Disputed Facts as directed by the Court. Local Rule 56.1(a) requires any party moving for summary judgment to submit a separate statement of undisputed material facts. Local Rule 56.1(b) requires the non-moving party opposing the summary judgment motion to file a separate statement of disputed facts. *Pro se* inmates are advised of this requirement in the Order directing them to file a summary judgment response. *Pro se* inmates are also advised of this requirement in the District's Prisoner Litigation

Guide, which contains an example to help them understand the concept of using the same paragraph numbering as that used by the moving party in their own statement of disputed facts.

Due to Plaintiff's failure, Defendants' Statement of Facts is deemed admitted pursuant to Local Rule 56.1(c). In determining whether there are genuine disputes of material fact, however, the Court has also considered the allegations set forth in Plaintiff's verified Amended Complaint. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001). "[A] complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint . . .." *Id*. As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id*. The Court will, therefore, "piece[] together [Plaintiff's] version of the facts from the verified complaint . . .." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016).

### B.    Denial of Medical Care

Plaintiff's allegations concerning medical care for his right knee are contradicted by the summary judgment record such that no jury could believe them. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious

medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether medical staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

There is no dispute that Plaintiff's right knee injury is a serious medical need. Plaintiff did not, however, meet the second, subjective prong of the deliberate indifference test. Based on

8

Defendant's Statement of Undisputed Facts and Plaintiff's attached medical records, Plaintiff was seen regularly for his right knee, his left hip, his uneven leg length, and other chronic health issues. He was seen on July 15, 2020, by LPN Jennings for right knee pain and given naproxen and an analgesic balm. (ECF No. 40 at 1; 40-2). On July 21, 2020, he was seen by APN Strickland, who ordered an x-ray, ACE bandage and naproxen. She noted he was already taking tramadol for his hip pain. (ECF No. 40 at 1; 40-3). The x-ray revealed no acute fracture, no significant degenerative disease, no joint effusion, and unremarkable soft tissue. "No acute osseus pathology present." (ECF No. 40 at 1; 40-4). Plaintiff was seen by PA Long on July 29, 2020. (ECF No. 40-5). She requested an MRI, continued his tramadol, and gave him a walker and an ACE bandage. (*Id*. at 4). He received an MRI of his right knee on November 2, 2020. ( ECF No. at 2; 40-6). The MRI indicated small joint effusion, radial meniscal tear, and mild arthritis. An increased T2 signal in the proximal tibia "could reflect prior bone bruise or microtrabecular fracture." (ECF No. 40-6). After the MRI, Plaintiff received either oral steroids or steroid injections. (40 at 2-5). Dr. Daniels is first noted in the summary judgment record as examining Plaintiff for left hip pain on December 8, 2020. (ECF No. 40-8). Plaintiff was regularly prescribed various pain medications and an ACE bandage for complaints of knee pain, as well as various assistive devices such as walkers or rollators. He was later prescribed a knee brace. (ECF No. 40 at 1-5). Plaintiff was noted to be non-compliant with the ACE bandage at times. (ECF No. 40 at 2). On at least two occasions, Plaintiff reported his right knee pain much improved. (*Id*. at 2,4). Plaintiff's care included consultation with orthopedic specialists at the University of Arkansas for Medical Sciences ("UAMS"). (ECF No. 40-1; 40-15; 40-19).

      Based on this summary judgment record, the Court concludes the care Plaintiff received was constitutionally sufficient. Courts "hesitate to find an [E]ighth [A]mendment violation when

9

a prison inmate has received medical care." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990). *See also, e.g., Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Eighth Amendment does not require that prisoners receive "unqualified access to health care"); *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991) (it is not constitutionally required that care be "perfect, the best obtainable, or even very good") (citation omitted); *Schaub v. VonWald*, 638 F.3d 905, 935 (8th Cir. 2011) (Beam, J., dissenting) ("inmates are only entitled to adequate medical care, not the best care possible") (internal quotation marks and citation omitted).

While Plaintiff disagrees with the timeliness and quality of care provided, such disagreement does not rise to a constitutional violation. The Eighth Circuit has "repeatedly held that a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail to rise to the level of a constitutional violation." *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (prisoner's disagreements on location of rehabilitation for burn injuries, amounts of pain medication, and frequency of bandage changes failed to state deliberate indifference); *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir. 1989) (prisoner's disagreement about treatment for mental deficiency, surgery for hernia, hearing deficiency, and nutritional deficiency found insufficient); *Lair v. Ogelsby*, 859 F.2d 605, 606 (8th Cir. 1988) (mere disagreement about which medication should have been prescribed does not constitute an Eighth Amendment violation); *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) (prisoner's disagreement about treatment of pain in his lower back and arm did not constitute an Eighth Amendment violation).

## IV.  CONCLUSION

Accordingly, it is recommended that Plaintiff's Amended Complaint (ECF No. 10) be DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **24th day of September 2024**.

/s/ *Christy Comstock*
HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE